

NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### at BALTIMORE

| | | | |
|---|---|---|---|
| In Re: | * | | |
| NADER MODANLO | * | Case No. | 05-26549-NVA |
| | * | Chapter | 11 |
| | * | | |
| In Re: | | | |
| NEW YORK SATELLITE INDUSTRIES, LLC | * | Case No. | 06-10158-NVA |
| Debtors | * | Chapter | 11 |

### MEMORANDUM OF DECISION IN SUPPORT OF ORDER
### GRANTING CHAPTER 11 TRUSTEE'S EMERGENCY MOTION FOR
### AUTHORITY TO TAKE ACTIONS IN CONNECTION WITH SUBSIDIARIES [111]

I.    **INTRODUCTION**

This contested matter presents the following issues: whether a debtor's single member

Delaware limited liability company ("LLC"), which was dissolved upon the debtor's filing of

bankruptcy, was effectively resuscitated by the actions of the Court appointed bankruptcy trustee

(as the debtor's successor/personal representative), and whether the trustee possesses

management (governance) rights in the LLC (or just economic interests).  The Delaware statute

governing the LLC is relatively new, and some of its provisions do not dovetail precisely.

Although the definitional section of the Delaware statute indicates that it applies to single

1

member LLCs, some of its operative provisions make sense only when applied to multi-member LLCs.  Little decisional law exists on the subject of the dissolution of single member LLCs and the role of bankruptcy trustees in that context.  The objective of the Chapter 11 Trustee in this matter is to obtain leave of this Court to cause a Delaware LLC, which is the Debtor's principal asset and a Chapter 11 Debtor itself, to call a meeting of shareholders of a corporation in which it is the largest shareholder and holds control.  The Court grants the relief requested by the Trustee.

II.    **THE PLEADINGS**

The Court has before it the following papers, on which the Court conducted evidentiary hearings on February 28, 2006 and March 1, 2006: (1) the Emergency Motion for Authority to Take Actions in Connection with Subsidiaries (the "Motion" or "Emergency Motion") [111] filed by Christopher Mead (the Chapter 11 Trustee in the Nader Modanlo case) and New York Satellite Industries, LLC ("NYSI"); (2) an Opposition to the Motion (the "Opposition") [119] filed by Nader Modanlo, the individual Debtor in the above-captioned eponymous Chapter 11 case; (3) the Chapter 11 Trustee's Response [128] which addresses the procedural issues raised in the Debtor's Opposition; (4) a Position Statement [139] filed by Final Analysis Communication Services, Inc. ("FACS") which also addresses, *inter alia,* the procedural issues raised in Mr. Modanlo's Opposition.  On February 28, 2006, the Court issued oral rulings with respect to four procedural issues raised in Mr. Modanlo's Opposition and standing objections raised by the Trustee in its Response.[1]  At the hearing, the Court heard testimony, received

_____

[1] On February 28, 2006, on the record at the outset of the hearing, the Court denied procedural objections raised in Mr. Modanlo's Opposition [119], finding that: (1) the relief requested by the Trustee is not of the kind that needs to be brought by adversary proceeding

documentary evidence, and had the benefit of argument of counsel.  In compliance with Rule

7052(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), made applicable to

contested matters by Rule 9014 of the Bankruptcy Rules, the Court now issues this

Memorandum of Decision of its findings of fact and conclusions of law in support of its Order

Granting the Trustee's Emergency Motion for Authority to Take Actions in Connection with

Subsidiaries.  A separate Order [170] has issued granting the Trustee's Emergency Motion,

which Order is supported by this Memorandum of Decision.[2]

## III.    **BACKGROUND AND PROCEDURAL HISTORY**

On December 23, 2005, the Court issued an Order [70] granting the Motion of Michael

Ahan (a major creditor of Nader Modanlo) for appointment of a Chapter 11 trustee in Nader

Modanlo's Chapter 11 case.[3]  On January 10, 2006, the Court entered an Order [91] designating

---

pursuant to Federal Rule of Bankruptcy Procedure 7001; (2) FACS is not an indispensable party
under Federal Rule of Bankruptcy Procedure Rule 7019 and need not be joined; and (3) the
issues presented are not matters which warrant abstention by this Court under 28 U.S.C. §
1334(c)(2).  The Court also denied standing objections raised by the Trustee in its Response
[128], finding that both the Debtor and FACS would have standing to object to the Trustee's
Emergency Motion.

[2] A ten day stay of this Order is imposed by Bankruptcy Rule 6004(g).  The Trustee
urged the Court to waive the stay to permit the Trustee to take immediate action consistent with
this Order.  The Court declined to do so.

[3] On January 3, 2006, the Debtor filed his Notice of Appeal [84] of this Order.  On
February 7, 2006, the Debtor filed a Motion to Stay Appointment of Trustee [108] and
Memorandum of Points and Authorities in Support of its Motion to Stay.  On February 14, 2006,
the United States Trustee filed its Opposition [114] to Debtor's Motion to Stay Appointment of
Trustee.  On February 17, 2006, Michael Ahan (an alleged major creditor of the Debtor) filed his
Opposition [120] to Debtor's Motion to Stay Pending Appeal.  On February 22, 2006, the Court
conducted a hearing with respect to the Motion to Stay.  The Court issued an oral ruling denying
the Debtor's Motion to Stay Appointment of Trustee, later memorialized in a Memorandum of
Decision in Support of Order Denying Motion to Stay Pending Appeal [131] and separate Order
[132] entered on February 24, 2006.  The Court's Memorandum [131] denying the stay pending
appeal of its Trustee Order provides a recitation of much of the background that gave rise to the

Christopher B. Mead as the Modanlo Chapter 11 Trustee (the "Trustee" or "Mr. Mead"). Immediately following his appointment, Mr. Mead began to investigate the assets of the estate (Mr. Modanlo's assets) over which he had begun to act as Trustee. He determined that Mr. Modanlo holds a 100% ownership interest in NYSI (a Delaware single member LLC), and that NYSI owns approximately 65% of the equity interests and 85% of the voting interests in FACS (a Maryland corporation). On January 10, 2006, the Trustee filed in this Court a voluntary Chapter 11 petition for NYSI, the above captioned Case No. 06-10158, which is now jointly administered with Mr. Modanlo's Chapter 11 case.

In this Emergency Motion, Mr. Mead seeks the Court's authorization to permit him to "take actions as the Manager of NYSI and that NYSI be authorized to direct the Secretary of FACS to call a special meeting of the stockholders of FACS and to take such other actions as are allowed by FACS Bylaws and applicable Maryland law." *Trustee's Emergency Mot. to Take Actions in Connection with Subsidiaries*, p. 8. As stated, the Debtor and FACS opposed the Trustee's Motion, maintaining that the Trustee is actually asking the Court to direct FACS (or its officers or board) to take action, which the Debtor and FACS contend this Court lacks jurisdiction to do. The Court did not, and does not need to, reach a decision regarding what, if any, powers it can exercise over FACS or its officers or board, because the Trustee responded to these objections and made clear to this Court's satisfaction that his Motion does not ask the Court to direct FACS or its officers or board to do anything. The relief sought by the Trustee is as follows:

> The Debtor owns 100% of the interests of NYSI which, in turn, owns at least

---

appointment of the Trustee.

4

63% of the equity interests in FACS, making NYSI the majority stockholder of FACS. Section 2.3(b) of the FACS Bylaws specifically allows NYSI, as the FACS majority stockholder, to request the calling of a special meeting of the stockholders of FACS. The mechanism by which the Bylaws allow NYSI to call a special meeting is for NYSI to direct the FACS Secretary to call the meeting. The procedure is designed to be a simple ministerial act: step 1 - NYSI directs the Secretary to call a special meeting; step 2 - the Secretary calls the meeting; step 3 - the meeting takes place. *The relief sought by the Emergency Motion is for authority to take step 1 and other actions which the Trustee and NYSI may be allowed to take in connection with NYSI's majority stockholder interest in FACS. The movants do not (at this time) seek the Court to order or direct that steps 2 and 3 above be taken. If this Court allows NYSI to request one or more special meetings, the Secretary will have to act in his fiduciary capacity in deciding what to do in response to NYSI directing that one or more special meetings be called.*

*Resp. of Chapter 11 Trustee and NYSI to Debtor's Procedural Arguments*, p. 3-4 (emphasis added).

Mr. Modanlo's interest in FACS (through NYSI) is potentially quite valuable. FACS received a jury verdict in its favor against General Dynamics Corporation in the amount of approximately $129 million.[4] A Final Order of Judgment was entered reducing the net verdict to approximately $11.87 million plus interest.[5]

Through his control of Mr. Modanlo's assets and NYSI, the Trustee wishes to cause FACS to hold a shareholder meeting. The Trustee concedes that he wishes to oust Mr. Modanlo (and others) from the FACS board. The Debtor acknowledges that he previously has declined

---

[4] A jury trial was held by the United States District Court for the District of Maryland (Honorable Peter J. Messitte) in *Final Analysis Communication Services, Inc. v. General Dynamics Corp. et al.*, Case No. 8:03-cv-00307-PJM.

[5] On April 10, 2006, the District Court entered final judgment in favor of FACS and against General Dynamics in the amount of $19.87 million, with simple interest to accrue at the rate of 6% per annum from September 19, 2000. *See* Order [411] signed April 13, 2006. Contemporaneously, the District Court entered final judgment in favor of General Dynamics and against FACS in the amount of $8.0 million, with simple interest to accrue at the rate of 6% per annum from September 19, 2000.

the Trustee's request to call an emergency meeting of the shareholders of FACS.  *See Trustee's Exhibit #10.*  Mr. Modanlo argues that he is under no obligation to call such a meeting at the Trustee's behest, and that any attempt by the Trustee to replace Mr. Modanlo (or anyone else) on the board of FACS is neither lawful nor prudent.  Additionally, the Debtor argues that the Trustee's allegations have already been addressed in state court litigation in which an Independent Investigator (James Cromwell, Esquire) was appointed by the Circuit Court of Maryland for Montgomery County.[6]  The Debtor maintains that the relief sought by the Trustee in the Emergency Motion is an attack on the state court's consent order of February 4, 2004, which, by the Debtor's and FACS's interpretation, precludes the Trustee from taking the action he seeks to take in the Emergency Motion.[7]

---

[6] In 2001, fourteen shareholders of FACS filed claims in the Circuit Court of Maryland for Montgomery County against Final Analysis, Inc. ("FAI"), FACS, and the Debtor alleging misappropriation, fraud, and breach of fiduciary duty on the part of the Debtor and FAI. *Raymond Schettino, et al. v. Nader Modanlo, et al. (Defendants/Third-Party Plaintiffs) v. Michael Ahan (Third-Party Defendant)*, Case No. 220156.  On October 22, 2004, a jury found that Mr. Modanlo had breached a fiduciary duty to Mr. Ahan, and awarded Mr. Ahan $103.93 million.

[7] The Court finds that it is unnecessary to the disposition of this matter to interpret the state court's consent order, and declines to do so.  28 U.S.C. § 157(b)(2)(M) specifically provides that "orders approving the use or lease of property..." are proceedings over which the Bankruptcy Court has jurisdiction.  The Trustee's Motion seeks relief under section 363(b) of the Bankruptcy Code, which governs the use, sale, or lease of property of the estate.  The Trustee's Motion seeks authorization from the Court to take action with respect to the powers Mr. Modanlo held as sole member of NYSI.  A request for use of such powers or interests of a debtor is properly brought under section 363(b).  The Court need not turn elsewhere to determine whether a trustee may make use of such powers or interests.  However, this Court notes that since the date of its Order granting the Trustee's Motion, the state court has interpreted its own consent order, and has found that the consent order does not prohibit a bankruptcy trustee from taking action.  By order entered on May 1, 2006, the Circuit Court of Maryland for Montgomery County (Honorable Michael D. Mason) denied a Motion brought by FACS for Enforcement of Consent Order.  The state court, interpreted its own consent order not to bind a bankruptcy trustee and stated:

The Debtor (Mr. Modanlo) argues that by operation of Delaware law, neither Mr.

Modanlo nor the Trustee as his successor, has any authority to cause NYSI (a single member

Delaware LLC) to do anything.  The Debtor raised this argument for the first time at the hearing

on the Debtor's Motion to Stay Appointment of Trustee, and raises it again orally in opposition

to the Trustee's Emergency Motion, relying upon section 18-304 of the Delaware Limited

Liability Company Act.  The Debtor posits that Mr. Modanlo's ability to act on behalf of the

LLC terminated when Mr. Modanlo (the LLC's sole member) entered Chapter 11, and that

neither he nor Mr. Mead therefore had the power to place NYSI into Chapter 11.  As will

become clear through the analysis that follows, the Court does not agree with Mr. Modanlo's

position, but the Court notes as an initial observation that it is highly curious that Mr. Modanlo

did not raise before now his argument that Delaware law barred him from acting for NYSI once

he filed Chapter 11.  Indeed, one of the very reasons argued by Mr. Ahan and given by the Court

for the appointment of the Trustee in the first place was precisely because Mr. Modanlo was

negligent or incompetent as a manager when he permitted NYSI to relinquish its interests in

---

Under paragraph 8 of the Revised Settlement Agreement and Mutual
Releases, the Agreement is binding upon the parties and their "... trustees."
However, the last part of the paragraph makes clear that it is directed at "... all
those acting in concert or participation with them or under their direction or
control."  This language is consistent with the purpose of the Agreement which
was to protect FACS from Nader Modanlo both individually and acting through
the control of others, including New York Satellite.  However, the Agreement
would not extend to persons, including trustees, acting independently, beyond the
control of Nader Modanlo.  Inasmuch as a bankruptcy trustee is not under the
control of Nader Modanlo, the Agreement would not bind him.  Accordingly, the
Court denies the motion for enforcement of the consent order.

Order Den. FACS Mot.  for Enforcement of Consent Order, May 1, 2006 (Honorable Michael D.
Mason, Circuit Court of Maryland for Montgomery County, MD).

FACS. *See generally Memorandum of Decision [131] in Support of Order Denying Motion to Stay Pending Appeal.* The Court wonders why, at the time Mr. Modanlo was contesting the Trustee appointment, he did not say he had been rendered powerless to act for it by Delaware law.

IV. <u>**ANALYSIS**</u>

A. <u>**Operation of Delaware Law Regarding NYSI as Single Member Limited Liability Company**</u>

NYSI is a single member Delaware limited liability company, of which the Debtor was the sole member. The Debtor raises interrelated issues with respect to the operation of the Delaware Limited Liability Company Act[8] (the "Act" or the "Delaware Act") upon NYSI. Debtor disputes that the Chapter 11 Trustee had the authority to place NYSI into Chapter 11. The Debtor argues that since section 18-304 of the Act rendered him powerless to act on behalf of NYSI once he filed his voluntary Chapter 11 petition on July 22, 2005 (causing him to cease being a member of NYSI, and causing dissolution of NYSI), the Trustee, likewise, is precluded from being a member of NYSI, and therefore could not act for it to make it a debtor under the Bankruptcy Code. The Debtor also disputes that he (and hence the Trustee) held any management (governance) rights in the LLC after the Modanlo bankruptcy case was filed, and maintains that the Debtor's and Trustee's interests became limited at that point to mere economic rights. Mr. Modanlo maintains that by operation of Delaware law, he (and thus the Trustee) lost all governance rights as of the Modanlo petition date, including rights to control and take action based on the LLC's majority voting and equity rights (*e.g.,* to direct the secretary of FACS to call

---

[8] The Delaware Limited Liability Company Act is codified in the Delaware Annotated Code, Title 6, Chapter 18.

a shareholder meeting).  FACS, seeking to enter a limited appearance through counsel, filed a

"position statement" [139] presenting virtually the same argument, namely, that the Trustee has

only economic interests and no authority to manage the LLC:

> In this case, the Trustee's entire claim with respect to FACS is based on his purported authority to exercise Mr. Modanlo's rights concerning the governance of NYSI.  Indeed, the Trustee admits that he "seeks authority to take actions as the Manager of NYSI...."  The Trustee, however, has no such management authority because Mr. Modanlo, in whose shoes the Trustee stands, lost that authority at the moment Mr. Modanlo sought bankruptcy protection.  The Trustee is, at best, an assignee of a bankrupt's interest in NYSI, as such has economic interests to any profits, but completely and entirely lacks any governance or management authority with respect to NYSI.

*Position Statement of Final Analysis Communication Services, Inc. Regarding Trustee's Emergency Mot.*, p. 10.

1.     Delaware Limited Liability Company Act

The Debtor (and FACS) rely primarily upon sections 18-304 and 18-801(a)(4) of the Act,

which provide in relevant part:

**§ 18-304 Events of bankruptcy.**

A person ceases to be a member of a limited liability company upon the happening of any of the following events:
> (1) Unless otherwise provided in a limited liability company agreement,[9] or with the written consent of all members, a member:
>> b.  Files a voluntary petition in bankruptcy

DEL. CODE ANN. tit. 6, § 18-304.

**§ 18-801 Dissolution.**

(a) A limited liability company is dissolved and its affairs shall be wound up upon the first to occur in the following:

---

[9] The Court notes that neither party provided the Court with a copy of the NYSI Limited Liability Company Agreement.

9

(4) At any time there are no members; provided, that the limited liability company is not dissolved and is not required to be wound up if:

a.    Unless otherwise provided in a limited liability company agreement, within 90 days or such other period as is provided for in the limited liability company agreement after the occurrence of the event that terminated the continued membership of the last remaining member, the personal representative of the last remaining member agrees in writing to continue the limited liability company and to the admission of the personal representative of such member or its nominee or designee to the limited liability company as a member, effective as of the occurrence of the event that terminated the continued membership of the last remaining member; provided, that a limited liability company agreement may provide that the personal representative of the last remaining member shall be obligated to agree in writing to continue the limited liability company and to the admission of the personal representative of such member or its nominee or designee to the limited liability company as a member, effective as of the occurrence of the event that terminated the continued membership of the last remaining member....

DEL. CODE ANN. tit. 6, § 18-801(a)(4).

The Debtor argues that when Mr. Modanlo filed his Chapter 11 petition, he ceased being a member of NYSI under section 18-304, and that NYSI was dissolved pursuant to section 18-801(a)(4).  Mr. Modanlo ignores other relevant sections of the Act.  The Trustee cites section 18-806 entitled "Revocation of dissolution," which provides:[10]

### § 18-806 Revocation of dissolution.

Notwithstanding the occurrence of an event set forth in § 18-801(a)(1), (2), (3) or (4) of this title, *the limited liability company shall not be dissolved and its affairs shall not be wound up if*, prior to the filing of a certificate of cancellation in the office of the Secretary of State, *the limited liability company is continued, effective as of the occurrence of such event, pursuant to the affirmative vote or written consent of all remaining members of the limited liability company or the personal representative of the last remaining member of the limited liability company if there is no remaining member* (and any other person whose approval is required under the limited liability company agreement to revoke a dissolution pursuant to this section); provided,

---

[10] Section 18-806 was enacted on August 1, 2005.  The Court has unearthed no case interpreting that section, and the legislative history provides little more guidance than the text of the statute itself.

however, if the dissolution was caused by a vote or written consent, the dissolution shall not be revoked unless each member and other person (or their respective personal representatives) who voted in favor of, or consented to, the dissolution has voted or consented in writing to continue the limited liability company. If there is no remaining member of the limited liability company and the personal representative of the last remaining member votes in favor of or consents to the continuation of the limited liability company, such personal representative shall be required to agree in writing to the admission of the personal representative of such member or its nominee or designee to the limited liability company as a member, effective as of the occurrence of the event that terminated the continued membership of the last remaining member.

DEL. CODE ANN. tit. 6, § 18-806 (emphasis added).

On January 10, 2006, this Court entered an Order [91] Approving the Appointment of Mr. Mead as the Chapter 11 Trustee in the Nader Modanlo case. That same day, Mr. Mead, purportedly exercising the Debtor's rights, amended the LLC's formation papers (*see* Trustee's Exhibit #2), designated himself the LLC manager, undid its dissolution, and placed NYSI into voluntary Chapter 11. The Debtor argues that the actions taken by the Trustee from January 10, 2006 forward with respect to NYSI are of no effect since the Trustee, by operation of Delaware law, could not have exercised such power. The Court disagrees.

Section 18-806 provides that "notwithstanding the occurrence of an event set forth in § 18-801(a)(1), (2), (3) or (4) of this title, the limited liability company shall not be dissolved and its affairs not be wound up if, prior to the filing of a certificate of cancellation in the office of the Secretary of State, the limited liability company is continued, *effective as of the occurrence of such event*...." DEL. CODE ANN. tit. 6, § 18-806 (emphasis added). Mr. Modanlo concedes that a certificate of dissolution was not filed. *Transcript of Emergency Motion*, March 1, 2006, p. 107, lines 22-24.

The Trustee produced at the hearing a document purporting to be a consent agreement to

continue the existence of NYSI.  The document was signed by the Trustee on the eve of the

hearing on the Trustee's Emergency Motion.  *See Trustee's Ex.* 14.  It is entitled "New York

Satellite Industries, LLC Written Consent of and Agreement Regarding Admission of Personal

Representative of Last Remaining Member" (the "LLC Consent Agreement") and provides:

> Pursuant to Section 18-806 of the Delaware Limited Liability Company Act (the "Act"), the undersigned, who is the Personal Representative (as defined in Section 18-101(13) of the Act), by virtue of being appointed Trustee pursuant to In re: Nader Modanlo, Case No. 05-26549-NVA filed in the United States Bankruptcy Court for the District of Maryland (Greenbelt Division) of the last remaining member of New York Satellite Industries, LLC (the "Company") hereby consents to continuation of the Company, effective as of the occurrence of an event described in Section 18-801(a)(4) of the Act (that is, the bankruptcy of the last remaining member), to the extent that such consent to continue has not already been made; and the undersigned, as such Personal Representative, hereby agrees to the admission of the undersigned, as a member of the Company, in such undersigned's capacity as the Personal Representative of the last remaining member, effective as of the date of the occurrence of the event described in Section 18-801(a)(4) of the Act.

This Consent and Agreement of Admission has been signed this 28th day of February, 2006.

*Trustee's Exhibit #14.*

The Trustee also produced a document entitled "Amendment of Limited Liability

Company Agreement" (the "LLC Amendment"), signed on January 10, 2006, the day Mr. Mead

was appointed Trustee.  *See Trustee's Exhibit #2.*  It provides, in relevant part:

> ... [I]n consideration of the Explanatory Statement, which is deemed a substantive part of this Amendment, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Trustee hereby agrees as follows:
>
> 1.    Notwithstanding anything else to the contrary, (i) the Company may be managed by a manager, as such term is defined by the Act, and (ii) the Company's manager need not be a member of the Company.
>
> 2.    The Trustee hereby appoints Christopher B. Mead, in his capacity as Chapter 11 Trustee for Nader Modanlo, in Bankruptcy Case No. 05-26549-NVA, United States Bankruptcy Court for the District of Maryland ("Manager"), as

manager of the Company. Management of the Company shall be vested solely in the Manager, and Manager shall have the absolute authority to take any and all actions on behalf of the Company, and to sign any and all documents on the Company's behalf, including, but not limited to, any and all agreements, contracts, and documents in connection with any court action. Any person dealing with the Company may exclusively rely on the Manager's signature as evidencing Managers authority to act on behalf of the Company.

Amendment of Limited Liability Company, Trustee's Exhibit #2.

Applying Delaware law, was the Trustee able to revive the LLC after its dissolution? This Court believes that he could and did revive the LLC in either (or both) of two ways. First, the LLC Amendment filed on the day of the appointment of the Chapter 11 Trustee constituted a writing satisfying section 18-806 to revoke dissolution. The Trustee intended that the LLC Amendment also would appoint him manager under section 18-402, and the Court finds that it did.[11]   Second, the

---

[11] Section 18-402 permits, unless otherwise provided in a limited liability company agreement, for LLC management, in whole or in part, by a manager. A manager is defined in the Act as "a person who is named as a manager of a limited liability company pursuant to, a limited liability agreement or similar instrument under which the limited liability company is formed." DEL. CODE ANN. tit. 6, § 18-801(10). Section 18-402 provides:

> **§ 18-402.  Management of limited liability company**
>
>       Unless otherwise provided in a limited liability company agreement, the management of a limited liability company shall be vested in its members in proportion to the ten current percentage or other interest of members in the profits of the limited liability company owned by all of the members, the decision of members owing more than 50 percent of the said percentage or other interest in the profits controlling; provided however, that if a limited liability company agreement provides for the management, in whole or in part, of a limited liability company by a manager, the management of the limited liability company, to the extent so provided, shall be vested in the manager who shall be chosen in the manner provided in the limited liability company agreement. The manager shall also hold the offices and have the responsibilities accorded to the manager by or in the manner provided in a limited liability company agreement. A limited liability company may have more than 1 manager. Unless otherwise provided in a limited liability company agreement, each member has the authority to bind the limited liability company.

DEL. CODE ANN. tit. 6, § 18-402.

LLC Consent Agreement executed on the eve of the March 1, 2006 hearing also constituted the writing required by section 18-806, effective as of the filing of the Debtor's voluntary bankruptcy. The Trustee believes that the LLC Amendment accomplished the desired result, but also filed the LLC Consent Agreement (in part) in case this Court did not agree and adopted arguments anticipated to be made by the Debtor and FACS.  Maybe this was a belt and suspenders approach by the Trustee, but in this Court's view, either the belt or the suspenders worked to revive the dissolved LLC, assuming that the Trustee was Mr. Modanlo's "personal representative."[12]   Mr. Modanlo contends that the Trustee was not his "personal representative."  Again, this Court disagrees with the Debtor.

2.    The Chapter 11 Trustee as "Personal Representative"

Mr. Modanlo maintains that even if section 18-806 is applicable, it is not effective to revive NYSI because Mr. Mead is not the "personal representative" or legal representative of Mr. Modanlo, who is the last remaining member of the LLC.  Section 18-101(13) of the Act defines "personal representative" as: "to a natural person, the executor, administrator, guardian, conservator, or other legal representative thereof and, as to a person other than a natural personal, the legal representative

---

Section 18-401 provides that "[a] person may be named or designated as a manager of the limited liability company as provided in § 18-101(10)...," namely, by a "limited liability agreement or similar instrument under which the limited liability is formed."  DEL. CODE ANN. tit. 6, §§ 18-101(10), 401.

[12] Some step needed to be taken to revive the LLC before the Trustee could effectively act to place it in bankruptcy.  It might have been less confusing if the Trustee had filed the LLC Consent Agreement first, on the day he was appointed.  That alone would have accomplished the revival of NYSI.  If the Trustee had done this first, he may not have needed to file the LLC Amendment.  But he did file the LLC Amendment before he filed NYSI's voluntary petition, and this was sufficient to legitimize the petition at the time it was filed. As of the date on which both were filed, either was effective.

or successor thereof." DEL. CODE ANN. tit. 6, § 18-101(13). Mr. Modanlo argues that if the Delaware legislature intended to give bankruptcy trustees authority to act under 18-806, it expressly would have included such persons in the definition of personal representative. The Court finds this argument unpersuasive.

The statutory and decisional authority is clear that a bankruptcy trustee is the successor to property of the debtor's estate and is the legal representative of the estate. The Trustee succeeds to the property of the debtor's estate. *See* 11 U.S.C. §§ 541(a)(1), 704(1); *see also In re Baer Group, Inc.*, No. 91-5-6020-JS, 1997 WL 912291, at *10 (D. Md. Dec. 01, 1997) (a bankruptcy trustee is the legal representative of the bankruptcy estate). As the representative of the estate, the trustee is "the proper party in interest and the only party with standing to prosecute causes of actions belonging to the estate." *In re Eisen*, 31 F.3d 1447, 1451 n.2 (9th Cir. 1994). Since a bankruptcy trustee may bring all causes of action the debtor could have brought on his own outside of bankruptcy, the terms "personal representative" and "legal representative" cannot reasonably be construed so narrowly as to exclude a trustee in bankruptcy.

To the extent there is a distinction between the representative of a bankruptcy estate and the representative of a debtor in the circumstances of this case, this Court still finds the Chapter 11 Trustee to be the personal/legal representative of the Debtor. The Court of Appeals for the Third Circuit[13], in interpreting the term "legal representatives" as used in the context of a federal patent statute, has stated: "The term 'legal representatives' used in R.S. Sec. 4898 is broad enough not only to include a master or a trustee appointed by a court possessing adequate equity power but also

---

[13] This Court looks to Third Circuit law since the statute being construed is a Delaware statute.

a trustee under a trust indenture, a guardian of property, or an executor or administrator, [or] an assignee of an insolvent debtor...." *McClaskey v. Harbison-Walker Refractories, Co.*, 138 F.2d 493, 495 (3d. Cir. 1943) (interpreting 35 U.S.C. § 261).

Accordingly, for the reasons stated, the Court finds the Trustee is the personal/legal representative of the Debtor (Mr. Modanlo), that the Trustee has effectively revived the LLC, and that he had the authority to place NYSI into voluntary bankruptcy.

3.    The Authority of the Chapter 11 Trustee to Exercise Management/Governance Rights in NYSI.

Next, the Debtor and FACS contend "that the Trustee is, at best, an assignee of a bankrupt's interest in NYSI and, as such, has economic interests to any profits, but completely and entirely lacks any governance or management authority with respect to NYSI." *Position Statement of Final Analysis Communication Services, Inc. Regarding Trustee's Emergency Mot.*, p. 10. The Debtor and FACS cite to primarily two cases in support of their position. The Trustee claims to be the successor to, and holder of, governance rights and cites three cases in support of his position.

The Court is aware of a line of decisions concluding that management (governance) rights are not generally assignable. Those cases, however, pertain in large measure to multi-member LLCs.[14] The most often cited case in Delaware, primarily relied upon by the Debtor and

---

[14] Many of the cases ostensibly on the subject address whether the operating agreement for the LLC is an executory contract and subject to the limitations of § 365(c),(e), or non-executory in nature and subject to § 541(c)(1), an issue the parties in the instant case have not briefed or raised. The parties have not provided the Court with a copy of the LLC agreement, and therefore the Court cannot decide whether it might have reached the same decision under section 541(c)(1) of the Bankruptcy Code. *See* In re Ehmann, 319 B.R. 200 (Bankr. D. Az. 2005); Milford Power Co., LLC v. PDC Milford Power, LLC, 866 A.2d 738 (Del. Super. Ct. 2004).

16

FACS, is the decision of the Delaware Chancery Court in *Milford Power Co. v. PDC Milford Power, LLC,* 866 A.2d 738, 754 (D. Ch. 2004).  The *Milford* decision concerns a multi-member LLC.  NYSI, however, is a single member LLC; the distinction is important.  The *Milford* court discussed at length the economic and public policy justifications for the enactment of section 18-304:

> Arguably, the Delaware LLC Act excuses Milford Holdings from accepting performance from a trustee or assignee.  For one thing, § 18-304 represents a default rule of Delaware public policy that expresses the view that, absent a contractual provision to the contrary, members of a Delaware LLC need not fear that they will have as fellow members bankruptcy trustees or assigns of bankruptcy trustees.  That is, § 18-304 expressly recognizes the unique relationship that exists among members of LLCs and protects solvent members from being forced into relationships they did not choose that result from the bankruptcy of one of their chosen co-investors.  Likewise, other provisions of the LLC Act that provide that assignees of membership interests be denied any right to participate as a member in the governance of the entity, absent a provision in an LLC agreement to the contrary also constitute applicable law that excuses a solvent member from accepting substitute performance as a member from a Bankruptcy Trustee or an assignee of a Bankruptcy Trustee.
>
> There are, of course, sound economic reasons why Delaware law, like that of many other states, embraces a default rule that terminates an LLC member's interest upon a bankruptcy filing. Typically, LLCs are closely held and the members often have important managerial duties and powerful voting rights. The Milford Power LLC Agreement is no exception; PDC's 5% interest gave it a seat on every important management committee and voting rights that enabled it to veto a range of significant business transactions. In a lucid article, Professor Ribstein has persuasively explained the rational reasons why investors in alternative entities would agree in advance to forsake their ownership interest upon filing bankruptcy because, by doing so, they insulate themselves from the economic harm that might result to them if one of their co-venturers files for bankruptcy.  The harms than can result include having a co-venturer with important power over the entity, whose economic incentives are distorted by its insolvency, push to liquidate the venture or to take other short-term measures that are beneficial to it as a debtor but detrimental to the venture as a whole and its other investors.

*Milford,* 866 A.2d at 754.

    The *Milford* court, adopting the reasoning of the United States District Court in *In re IT*

*Group, Inc.*[15], held that the *ipso facto* clause in the Milford Power LLC agreement was effective to the extent it deprived the minority member (debtor) of its ability to participate as a member in the governance of the LLC. *Id.* at 760. It held that the minority members retain only bare economic rights as an equity owner. *Id.* The court stated:

> By adhering to the reasoning of Judge Farnan in the *In re IT* case, I leave the parties with a more complex outcome. By enforcing the Ipso Facto Clause so as to deprive PDC (or a transferee from it) of the ability to exercise the strong participatory rights given to PDC by the LLC Agreement, I recognize the legitimate business justification for § 18-304 and ipso facto clauses modeled on it, a justification well-explained by Professor Ribstein's article on the subject. At the very least, my approach alleviates the concern that members will, because of solvency concerns, interfere with the ability of a limited liability company to pursue risky business strategies that hold the promise for large profits.

*Id.* at 761.

The legitimate business justifications described by the court for the existence of section 18-304 (and similar default statutes around the country) make sense in the context of multi-member LLCs. Like partners in a partnership, members of the LLC have voluntarily associated in a business enterprise and the relationship among them may be personal in character. One cannot simply substitute in someone else who is a stranger without affecting those (personal) relationships among members. That reasoning, however, is substantially undermined, if not meaningless, in the context of single member limited liability companies. By definition, there can be no remaining members of a single member LLC (like NYSI) whose personal relationships (among members) could be compromised by being forced to accept substitute performance from

---

[15] 302 B.R. 483 (D. Del. 2003), *aff'g In re IT Group, Inc.*, No. 02-10118-MFW (Bankr. D. Del. June 20, 2002).

a stranger (bankruptcy trustee). Accordingly, the Court finds the facts in, and holding of, *Milford* distinguishable from the case at hand.

The Debtor argues that the Delaware statute simply does not contemplate and fails to address single member LLCs. The Debtor speculates that this lapse occurred because the LLC statute was adopted largely from the Partnership Act, and by definition a partnership requires two or more partners. The Court disagrees that the Act does not address or apply to single member LLCs. The Court recognizes the most basic of all cannons of statutory construction: that statutes mean what they plainly say. The Delaware legislature specifically defined the term 'limited liability company' as "a limited liability company formed under the laws of the State of Delaware and having 1 or more members." DEL. CODE ANN. tit. 6, § 18-101(6).

LLCs are of relatively recent origin. It is not surprising, therefore, that the parties have been unable to cite the Court to many cases specifically dealing with the issues in the context of single member LLCs, nor has the Court's own research uncovered more than a few.[16] But the Court finds persuasive *In re Albright*, 291 B.R. 538 (Bankr. D. Col. 2003), which applies Colorado's version of the Limited Liability Company Act (the "Colorado Act"). The Colorado Act is similar in many respects to the Delaware Act. In *Albright*, a Chapter 7 debtor was the sole member and manager of a Colorado LLC. The Chapter 7 trustee filed a motion to allow the trustee to take any and all necessary actions to liquidate property owned by the LLC. The trustee

---

[16] *See* 9 SUSAN KALINKA, LIMITED LIABILITY COMPANIES AND PARTNERSHIPS: A GUIDE TO BUSINESS AND TAX PLANNING, LOUISIANA CIVIL LAW TREATISE § 1.44 (2006) (concerning multi-member LLC's but pointing out that there "is no reason to prohibit a trustee in bankruptcy from assuming all of the rights and obligations of a debtor who is the only member of a single-member LLC. In that case, there are no non-debtor members whose interests could be harmed by the operation of the LLC by a trustee or debtor in possession.")

19

argued that because the debtor was the sole member and manger of the LLC at the time the

debtor filed bankruptcy, that he now controlled the LLC and could cause the LLC to sell the real

property that it owns and distribute the proceeds to the bankruptcy estate.  The debtor, on the

other hand, argued that the trustee acts merely for her creditors and cannot assume management

of the LLC or cause the LLC to sell the real property.  The court disagreed with the debtor,

finding that because there are no other members in the LLC, the trustee obtained all of her rights,

including the right to control the management of the LLC.  *Id.* at 540.  The court addressed the

same policy considerations described by the court in *Milford.*

> [T]he charging order, as set forth in Section 703 of the Colorado Limited Liability
> Company Act, exists to protect other members of an LLC from having involuntarily
> to share governance responsibilities with someone they did not choose, or from
> having to accept a creditor of another member as a co-manager.  A charging order
> protects the autonomy of the original members, and their ability to manage their own
> enterprise.   In a single-member entity, there are no non-debtor members to protect.
> The charging order limitation serves no purpose in a single member limited liability
> company, because there are no other parties' interests affected.

*Id.* at 541.

Noting that the result would be different if there were other members in the LLC, the court held

that because the trustee became the sole member of the LLC upon the debtor's bankruptcy filing,

the trustee controls, directly or indirectly, all governance of that entity, including decisions

regarding liquidation of the entity's assets.  *Id.*

The Court is also persuaded by the nonsensical scenario, as illustrated by Trustee's

Exhibit #1, that would result if the Court were to conclude, as the Debtor would like it to, that

NYSI was dissolved and forever incapable of being resuscitated by the Trustee.  If the Act and

cases were to be construed as to create a completely non-existent NYSI (or one with no ability to

be managed by anyone), how, in the circumstances in this case, could the Trustee (or even Mr. Modanlo if he were still a debtor-in-possession) ever exercise the (85 %) voting or (63 %) equity rights held by NYSI in FACS?[17]  To whom or what would these rights escheat?  This interpretation of the statute does not lead to a logical result.[18]

The Court points to two sections of the Delaware Act (18-702 and 18-704), neither one of which was raised in the parties' papers or at the hearing.  The Court finds these sections inapplicable to the current Emergency Motion and to the position of the Debtor and FACS, but feels it is appropriate to address them briefly because they pertain facially to aspects of the

---

[17] The Court cites to the relevant portion of the Trustee's argument on this point:

> So we have Mr. Aaronson's and Mr. Tolchin's argument that there is a single section of the Delaware LLC statute, Section 18-304, which says in essence, as they argue it, that a person ceases to be a member of an LLC upon the filing of bankruptcy by that person.  From that, without looking at anything else in the statute or elsewhere, what they want to say somehow is New York Satellite no longer exists and, lo and behold, it ends up back with Mr. Modanlo, not his bankruptcy estate, not the trustee, not even Mr. Modanlo as a debtor; it just seems to be to his benefit.
> Or worse, what they're saying is New York Satellite just disappears and goes poof into thin air and no longer exists and gee, now we have a huge problem because if you look at Exhibit 1, we can't get from the Mr. Modanlo/Mr. Mead level down to FACS because the intermediate entity has just disappeared.
> Well, that's not how laws work.  That's not how laws are designed to work. That law under the scenario wouldn't make any sense at all.  In fact, it's a total and utter misreading of the section that totally ignores other sections of the Delaware LLC statute and the case law that they in fact attempt to rely on.

*Transcript of Emergency Motion*, March 1, 2006, p. 93, line 3-24, p. 94, line 1-2.

[18] The Trustee also cites *In re Desmond*, No. 03-13878-MWV, 2005 WL 1244842 D. N.H. Apr. 1, 2005) for the proposition that Mr. Modanlo is estopped from taking the position that NYSI was dissolved under Delaware law upon the filing of Mr. Modanlo's bankruptcy petition.  The Trustee argues that Mr. Modanlo continued to act on behalf of NYSI from the time of the filing of his petition until at least the time this Court appointed the Chapter 11 Trustee. The Court finds that it need not reach this argument because it finds the Trustee has complied with the Delaware Act and rests its decision on other independent grounds.

21

Debtor's and FACS' argument.  Sections 18-702 and 18-704 provide in relevant part:

### § 18-702.  Assignment of limited liability company interest

(a) A limited liability company interest[19] is assignable in whole or in part except as provided in a limited liability company agreement.  The assignee of a member's limited liability company interest shall have no right to participate in the management of the business and affairs of a limited company except as provided in a limited liability company agreement and upon:

> (1) *The approval of all of the members of the limited liability company other than the member assigning the limited liability company interest*; or

> (2) Compliance with any procedure provided for in the limited liability company agreement.

(b) Unless otherwise provided in a limited liability company agreement:

> (1) An assignment of a limited liability company interest does not entitle the assignee to become or to exercise any rights or powers of a member;

> (2) An assignment of a limited liability company interest entitles the assignee to share in such profits and losses, to receive such distribution or distributions, and to receive such allocation of income, gain, loss, deduction, or credit or similar item to which the assignor was entitled, to the extent assigned.

DEL. CODE ANN. tit. 6, § 18-702 (emphasis added).

### § 18-704.  Right of assignee to become member.

(a) An assignee of a limited liability company interest may become a member as provided in a limited liability company agreement and upon:

> (1) *The approval of all of the members of the limited liability company other than the member assigning limited liability company interest*; or

> (2) Compliance with any procedure provided for in the limited liability company agreement.

DEL. CODE ANN. tit. 6, § 18-704 (emphasis added).

---

[19] "Limited liability company interest" means a member's share of the profits and losses of a limited liability company and a member's right to receive distributions of the limited liability company's assets.  DEL. CODE ANN. tit. 6, § 18-101(8).

Section 18-702 is a default rule under the Act that limits an "assignment" of an interest in a limited liability company to the "limited liability company interest," *i.e.*, a member's share of the profits and losses of a limited liability company and a member's right to receive distributions of the limited liability company's assets.  The Court  using principles of statutory construction and adopting the reasoning of the Bankruptcy Court in *In re Albright*, finds these <u>particular</u> sections inapplicable to cases concerning single member limited liability companies.

Again, the Court finds the reasoning in *Albright* persuasive.  *Albright* implicates the Colorado Limited Liability Company Act (the "Colorado Act").  Although not identical in form, the relevant provisions of the Colorado Act and Delaware Act operate virtually identical.  In particular, section 7-80-702 of the Colorado Act provides:

> (1) The interest of each member in a limited liability company constitutes the personal property of the member and may be transferred or assigned.  However, if all of the other members of the limited liability company *other than the member proposing to dispose of his or its interest* do not approve of the proposed transfer or assignment by unanimous written consent, the transferee of the member's interest shall have no right to participate in the management of the business and affairs of the limited liability company or to become a member.  The transferee shall only be entitled to receive the share of profits or other compensation by way of income and the return of contributions to which that member would otherwise be entitled.

COLO. REV. STAT. § 7-80-702 (2004) (emphasis added).

Section 7-80-702 contains the clause "other than the member proposing to dispose of his or its interest...," confirming that  "other members" do not include the transferee (or assignee).  The Colorado Act "requires the unanimous consent of "other members" in order to allow a transferee to participate in the management of the LLC." *Albright*, 291 B.R. at 540.  The *Albright* court held that because there were no other members in the LLC, unanimous approval of the transfer was

23

unnecessary.  *Id.*   In a related footnote, the court noted that:

> Under Colo.Rev.Stat. § 7-80-702, *supra*, the result would be different if there were other non-debtor members in the LLC.  Where a single member files bankruptcy while the other members of a multi-member LLC do not, and where the non-debtor members do not consent to a substitute member status for a member interest transferee, the bankruptcy estate is only entitled to receive the share of profits or other compensation by way of income and the return of the contributions to which that member would be otherwise entitled.

*Id.*, n.7.

Sections 18-702 and 18-704 of the Delaware Act contains similar provisions, providing that an assignee of a LLC interest may become a member as provided in a LLC agreement and upon "[t]he approval of all of the members of the limited liability company *other than the member assigning the limited liability company interest....*"  Parsing through the language of the section, the Court can not possibly see how these sections are applicable in the instant case.  "The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.  In such cases, the intention of the drafters, rather than the strict language controls."  *United States v. Ron Pair Enter.*, 489 U.S. 235, 242 (1989) (internal citations omitted).   It is clear that this Court's decision that these sections are inapplicable in single member LLCs do not contravene the policy reasons underlying such default rules as discussed in *Milford* and *Albright*.  These sections are meaningless in the context of single member LLCs.  There are no remaining members except, notably, the member assigning the limited liability company interest (the Trustee), the very person these sections preclude from offering consent.  For this reason, the Court (noting that the Act as a whole states that it contemplates single member limited liability companies) finds that these particular sections, 18-

24

702 and 18-704, cannot apply in the context of single member limited liability companies. The Debtor and FACS have not articulated, nor can we discern, any significant reason why the Delaware legislature would have intended, or any policy reason would compel, the preclusion of governance rights to the Chapter 11 Trustee of this single member limited liability company.

The parties in this case have presented the Court with an issue of early impression, certainly in this District. The Court is persuaded that the Trustee has complied with the mandates of the Delaware Act and, in particular, section 18-806 governing revocation of dissolution. The Court finds that the decisional law interpreting LLC acts that divest bankruptcy trustees of a LLC member's management rights are founded on notions that (remaining) members (like partners in a partnership) should not be forced to accept substituted performance by a member's trustee. The Court finds this concern to be applicable only in the context of multi-member LLCs, not single member LLCs. Accordingly, the Court finds that the Trustee had the power to place NYSI into bankruptcy upon his appointment, and, standing in the shoes of the Debtor and complying with the mandates of the Delaware Act, possesses both the economic and governance rights to participate in the management of NYSI that the Debtor himself enjoyed prior to his bankruptcy filing.

## B. Section 363(b)(1) Relief

The Trustee's Emergency Motion seeks relief under section 363(b)(1) of the Bankruptcy Code. Section 363(b)(1) states in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Most section 363(b)(1) motions involve use of tangible property, but property of the estate includes intangible property as well, such as stockholder equity rights and

25

voting rights.  *Collier on Bankruptcy,* ¶ 363.02[1].

In the instant Motion, the Trustee, through his control of Mr. Modanlo's assets and NYSI, wishes to cause FACS (in which NYSI holds a majority stock interest) to hold a shareholder meeting.  The Trustee concedes that he wishes to oust Mr. Modanlo (and others) from the FACS board. As previously noted, the Trustee has clarified the relief he seeks as follows:

> The Debtor owns 100% of the interests of NYSI which, in turn, owns at least 63% of the equity interests in FACS, making NYSI the majority stockholder of FACS. Section 2.3(b) of the FACS Bylaws specifically allows NYSI, as the FACS majority stockholder, to request the calling of a special meeting of the stockholders of FACS. The mechanism by which the Bylaws allow NYSI to call a special meeting is for NYSI to direct the FACS Secretary to call the meeting.  The procedure is designed to be a simple ministerial act: step 1 - NYSI directs the Secretary to call a special meeting; step 2 - the Secretary calls the meeting; step 3 - the meeting takes place. The relief sought by the Emergency Motion is for authority to take step 1 and other actions which the Trustee and NYSI may be allowed to take in connection with NYSI's majority stockholder interest in FACS.  The movants do not (at this time) seek the Court to order or direct that steps 2 and 3 above be taken.  If this Court allows NYSI to request one or more special meetings, the Secretary will have to act in his fiduciary capacity in deciding what to do in response to NYSI directing that one or more special meetings be called.

*Resp. of Chapter 11 Trustee and NYSI to Debtor's Procedural Arguments*, p. 3-4.

The Trustee has stated that he believes that the actions he wants to take through NYSI (as the majority stockholder of FACS) are consistent with the FACS Bylaws and applicable non-bankruptcy law, and are in the ordinary course of business.  Nonetheless, the Trustee has filed the instant Motion asking for authority to act <u>outside</u> the ordinary course "in an abundance of caution."  *See Trustee's Emergency Mot. to Take Actions in Connection with Subsidiaries*, p**.** 5.

Neither the Bankruptcy Code nor its legislative history provides a framework for

analyzing whether particular transactions are or are not in the ordinary course of business. *In re Dornier Aviation,* No. 02-82003-SSM, 2002 WL 31999222, at *8 (Bankr. E.D. Va. Dec. 18, 2002). Courts have developed two commonly used tests for determining whether a transaction is in the ordinary course of business: (1) horizontal dimensions test; and (2) vertical dimension (also know as the reasonable expectations) test. *In re Springfield Contracting Corp.,* 154 B.R. 214, 225-26 (Bankr. E.D. Va. 1993) (internal citations omitted). This Court need not determine whether the proposed action is inside or outside the ordinary course of business because the Court finds that even assuming the proposed action is outside the ordinary course, the Trustee has articulated business justification for using the property as proposed and has demonstrated by evidence in this matter (as addressed herein) that there are sound business reasons for granting the relief sought under section 363(b).

Usually calling it the business judgment rule, courts have found that there must be some "'articulated business justification,' other than appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business before the bankruptcy judge may order such disposition under section 363(b)." *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2d Cir. 1983) (holding that a judge determining a § 363(b) application must expressly find from the evidence presented before him at the hearing a good business judgment reason to grant such an application).

The Court conducted a hearing over the course of two days, and after making an independent evaluation of the evidence, is satisfied that the Trustee demonstrated business justification for the request made. NYSI's ownership interests in FACS constitute the primary assets available for recovery. The Trustee wishes to replace Mr. Modanlo (and others) on the

board so the Trustee can explore opportunities with respect to the judgment that FACS has against General Dynamics. The Trustee fears that if he does not get control from Mr. Modanlo in what remains of the General Dynamics litigation, opportunity for resolving the litigation favorably may be reduced. The Trustee acknowledges that Mr. Modanlo was instrumental in providing litigation support in the General Dynamics case, but the Trustee does not believe Mr. Modanlo will resolve the General Dynamics litigation on his own as long as a judgment is outstanding against him by Michael Ahan. The Trustee believes that given Mr. Ahan's claim, Mr. Modanlo may do what he can to delay or subvert the flow of money to FACS' shareholders, NYSI, and ultimately through it, to Mr. Modanlo's estate. The Trustee also expressed serious concerns over the loan purported to have been made by Prospect Telecom to NYSI, and Prospect Telecom's purported lien on all of NYSI's stock interests in FACS.[20] Mr. Mead additionally testified that despite numerous requests to obtain all documents related to the corporate governance of NYSI, the Debtor has not produced any. *See Transcript of Emergency Motion*, February 28, 2006, p. 95, line 1-4. The Court finds that the Trustee is credible, and that based on the evidence presented, there is a reasonable articulated business justification (or sound business reason) for the actions he wishes to take.

The Debtor and FACS maintain that the claims that concern the Trustee have been thoroughly reviewed by the state court appointed independent Investigator, who concluded that there has been no fraud or misappropriation by Mr. Modanlo, and that leaving Mr. Modanlo in

---

[20] The Prospect Telecom loan was the subject of the replevin action in state court. In support of the Emergency Motion, the Trustee raised evidence about Mr. Modanlo's handling of the Prospect Telecom transaction that gave rise to the Court's decision to appoint a Trustee in the first place.

place on the FACS board is in the best interest of FACS.  Additionally, FACS argues that the

Trustee is in the wrong court, and the only court with authority to allow a change in the board of

directors of FACS is the Circuit Court of Maryland for Montgomery County.[21]  The Debtor and

FACS argue that it is imprudent to oust Mr. Modanlo from the FACS board, and that the Trustee

has not adequately considered the business issues that were fully evaluated by the Independent

Investigator and heard by the state court.  The Debtor's and FACS positions are not compelling

and the Debtor and FACS have not demonstrated that the Trustee has failed to present a sound

business reason to take the steps he proposes to take.  As already stated, the Trustee has clarified

the relief he seeks, and the Court so construes his request as a request for an order authorizing

the Trustee to cause NYSI to direct the FACS secretary to call a special meeting of stockholders.

The Trustee refers to this action in its Response [128] as "step 1," and appears to recognize that

if Trustee's (NYSI's) demand for a meeting is refused by FACS' secretary, that a "step 2" may

be necessary (perhaps in another court).  *See Resp. of Chapter 11 Trustee and NYSI to Debtor's*

*Procedural Arguments*, p. 3-4.   By the instant Motion, the Trustee does not request this Court to

order the FACS secretary (or anyone else) to call a stockholder meeting ("step 2"), and does not

request this Court to direct that the meeting take place ("step 3").  *Id.*  These questions, if

necessary, are left to be decided for another day (and possibly for another court).  The Trustee

asks only that he be authorized by this Court to take steps himself.  Having heard and evaluated

the evidence, and for reasons stated, the Court has concluded that the Trustee is entitled to the

relief requested.

 For the foregoing reasons, the Trustee's Emergency Motion is granted.  A separate order

---

[21] *But see supra*, note 7.

[170] has issued.

cc:    Debtors
        Joel S. Aronson, Esq.
        Joseph B. Suntum, Esq.
        Bradford F. Englander, Esq.
        Michael D. Nord, Esq.
        Richard Goldberg, Esq.
        Lynn A. Kohen, Esq.
        U.S. Trustee
        Glenn Manishin, Esq.
        Edward J. Tolchin, Esq.